1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SUE MARCELLA HAMBY,

11            Petitioner,                    No. CIV S-97-0164 LKK DAD P

12        vs.

13   TINA FARMON,

14            Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding by counsel with a petition for writ of

17   habeas corpus.  This case is one of five that have been related for administrative purposes.  On

18   September 9, 2005, the cases came before the court for hearing of respondents' motions to

19   dismiss the petitioners' amended petitions as containing untimely claims that do not relate back

20   to claims that were timely filed.  Glenn R. Pruden appeared for the moving parties.  Janice L.

21   Lagerlof appeared for petitioner Hamby.  The parties' arguments were heard, and the motions

22   were taken under submission.  For the reasons set forth below, the undersigned will recommend

23   that respondent's motion be granted.

24                              PROCEDURAL HISTORY

25            On October 2, 1991, Gary Summar was murdered in Trinity County.  On

26   December 16, 1991, Robert Bond, Leafe Dodds, Robert Fenenbock, Ernest Knapp, Anthony

1

Lockley, and Bernard MacCarlie were arraigned in Trinity County Superior Court on charges of participating in the murder.  On October 5, 1992, Barbara Adcock, Cherri Frazier, and Sue Hamby were also arraigned in Trinity County on charges of participating in the murder.

Pretrial litigation in the Trinity County Superior Court lasted through September 1993.  During this time, motions for multiple juries, motions to determine the competence of a key government witness, motions for severance, motions for change of venue, motions to dismiss or demur, and other motions were resolved in the Trinity County Superior Court.  On August 16, 1993, the court ruled that there would be four separate trials, with two trials involving dual juries to be conducted in Solano County Superior Court and two additional trials to be conducted in either Stanislaus or San Joaquin County.  Subsequently, however, Ernest Knapp was dismissed as a defendant, and the remaining defendants were prosecuted in three rather than four trials.

The first two trials were conducted in Solano County, while the third was conducted in Contra Costa County.  All three trials were prosecuted by Robert Maloney, a special prosecutor appointed to the case.  Defendants Hamby, Fenenbock, and Frazier were tried in the first trial, which began on November 15, 1993, and concluded on February 4, 1994; judgment was entered on March 16, 1994.  Defendants Bond, MacCarlie, and Dodds were tried in the second trial, which commenced in September 1994; judgment was entered on January 20, 1995. The trial of defendants Adcock and Lockley was conducted in 1995.

I. Petitioners Hamby, Fenenbock, and Frazier

In the first trial, defendant Fenenbock was convicted of first degree murder, with enhancements for use of a weapon and infliction of great bodily injury, but was acquitted of conspiracy to commit murder.  Defendants Hamby and Frazier were convicted of conspiracy to commit murder but were acquitted of murder.

On appeal, defendant Fenenbock raised seven claims, alleging there was insufficient evidence to support his conviction, two jury instructions were erroneous, several errors stemming from the testimony of child witness Randy Hogrefe, and the trial court

erroneously allowed rebuttal witnesses.  Defendant Hamby joined in the claims raised by defendants Fenenbock and Frazier and raised additional claims concerning jury instructions and trial court error with regard to rebuttal evidence.  Defendant Frazier joined in the claims raised by defendants Hamby and Fenenbock and raised additional claims concerning jury instructions and her sentence.  Defendant Frazier also filed a state habeas petition claiming ineffective assistance of trial counsel.

In a partially published opinion filed on July 1, 1996, <u>People v. Fenenbock, et al.</u>, 46 Cal. App. 4th 1688 (1996), the California Court of Appeal for the First Appellate District affirmed the judgments of conviction entered against defendants Hamby, Fenenbock, and Frazier and denied defendant Frazier's habeas petition.  On October 2, 1996, the California Supreme Court denied review.  The defendants did not file petitions for certiorari in the United States Supreme Court.

On January 31, 1997, Sue Hamby filed a pro se federal habeas petition raising two claims.  The respondent filed an answer to her petition on April 11, 1997, and a pro se traverse was filed on May 14, 1997.  On September 12, 1997, Robert Fenenbock filed a pro se federal habeas petition raising seven claims, and on November 20, 1997, Cherri Frazier filed a pro se federal habeas petition raising two claims.  On December 4, 1997, the Federal Defender was appointed to represent petitioner Fenenbock.  The Hamby, Fenenbock, and Frazier cases were related for administrative purposes on December 24, 1997, and the Federal Defender was appointed to represent petitioners Hamby and Frazier.  Jolie Lipsig subsequently substituted in as counsel for petitioner Fenenbock, and Janice Lagerlof substituted in as counsel for petitioner Hamby.  At the initial status conference held on February 26, 1998, the undersigned granted the first of many continuances requested by petitioners for the purpose of obtaining and reviewing the voluminous records of their trial and of the two subsequent trials.  On March 16, 1999, the California Court of Appeal filed its decision in the consolidated appeals of co-defendants Bond, MacCarlie, Adcock, and Lockley.  Petitioners Hamby, Fenenbock, and Frazier were eventually

1   ordered by the undersigned to file amended petitions and any accompanying motions by May 1,

2   2000.  However, on April 5, 2000, petitioners moved for leave to conduct discovery regarding

3   claims not yet presented to any court.  The motion was denied, and further continuances were

4   granted.

5          On September 24, 2001, petitioners moved to hold their federal proceedings in

6   abeyance.  Petitioners indicated their intention to file state exhaustion petitions by November 16,

7   2001.  In opposition, respondents argued that the statute of limitations had expired and any new

8   claims would be untimely.  In findings and recommendations filed November 1, 2001, the

9   undersigned recommended that petitioners' joint motion be granted and that all petitioners be

10  required to file a motion for leave to amend or an amended federal habeas petition within thirty

11  days after disposition of their state habeas petitions.  The findings and recommendations were

12  adopted on December 4, 2001, and the Hamby, Fenenbock, and Frazier cases were stayed.

13  II.  Petitioners Bond and MacCarlie

14          In the second trial in the Solano County Superior Court, defendant Dodds was

15  acquitted of all charges.  Defendant MacCarlie was convicted of conspiracy to commit murder,

16  two counts of kidnaping, mayhem, and assault with a deadly weapon, plus enhancements for use

17  of a weapon and infliction of great bodily injury, but the jury was unable to reach a verdict on the

18  charge of murder.  The trial court declared a mistrial on the murder charge against defendant

19  MacCarlie.  Defendant Bond's separate jury was also unable to reach a verdict on the charge of

20  murder, and a mistrial was declared to that count.  Defendant Bond was convicted of conspiracy

21  to commit murder and acquitted of the remaining charges.

22          On appeal, defendant Bond claimed that there was insufficient evidence of

23  conspiracy to commit murder, the trial court erroneously instructed the jury on the requisite intent

24  for conspiracy, and the trial court failed to require the jury to determine whether petitioner

25  conspired to commit first or second degree murder.  Defendant Bond joined in all applicable

26  arguments raised by defendant MacCarlie.  Defendant MacCarlie argued on appeal that (1) the

4

1   trial court erroneously instructed the jury on the requisite intent for conspiracy, lesser included

2   offenses to conspiracy to commit murder, and heat of passion; (2) trial counsel was ineffective

3   because he failed to request instructions on lesser included offenses to conspiracy to commit

4   murder; (3) the trial court erred by taking partial verdicts before replacing a juror who had

5   become ill; and (4) the trial court erroneously calculated presentence credits.

6          In an unpublished opinion filed March 16, 1999, the California Court of Appeal

7   for the First Appellate District affirmed the convictions of defendants Bond and MacCarlie but

8   remanded for modification of defendant MacCarlie's presentence credits.  On June 30, 1999, the

9   California Supreme Court denied review.  Neither defendant Bond nor defendant MacCarlie filed

10  a petition for certiorari in the United States Supreme Court.

11         On October 29, 1999, Robert Bond filed a pro se federal habeas petition alleging

12  that at his trial in state court there was insufficient evidence presented of conspiracy to commit

13  murder and that the jury instructions on conspiracy to commit murder violated due process.  The

14  Federal Defender was appointed to represent petitioner Bond, and the case was set for a status

15  conference.  Lindsay Anne Weston substituted in as counsel for petitioner Bond.  The court

16  declined to relate the Bond case to the Hamby, Fenenbock, and Frazier cases.  Several

17  continuances were thereafter granted in the Bond case.

18         On August 23, 2000, Bernard MacCarlie filed a pro se federal habeas petition

19  alleging that the jury instructions on conspiracy to commit murder violated due process, the

20  failure to give instructions on conspiracy to commit second degree murder violated due process

21  and ex post facto laws, trial counsel was ineffective for failing to request an instruction on

22  conspiracy to commit second degree murder, the trial court's failure to instruct on heat of passion

23  violated due process and ex post facto laws, and the verdict was coerced as a result of the court's

24  taking partial verdicts before a juror was excused for illness.  Petitioner MacCarlie's application

25  to consolidate his case with petitioner Bond's was denied.  The court appointed the Federal

26  Defender to represent petitioner MacCarlie and set the case for a status conference.  Margaret

Littlefield substituted in as counsel for petitioner MacCarlie.  Thereafter, several continuances were granted at the request of counsel for the various petitioners.

A status conference was held in the Bond and MacCarlie cases on October 26, 2001, and a scheduling conference was set for January 18, 2002.  The Bond and MacCarlie cases were related to the Hamby, Fenenbock, and Frazier cases for administrative purposes on December 12, 2001.  On January 18, 2002, a deadline was set for the filing of abeyance motions by petitioners Bond and MacCarlie.  The motions were filed, and respondents opposed them on the ground that the statute of limitations had expired and any new claims would be untimely.  In findings and recommendations filed April 23, 2002, the undersigned recommended that petitioners' motions be granted and that each petitioner be required to file an amended federal habeas petition within thirty days after disposition of their state habeas petitions.  The findings and recommendations were adopted on May 20, 2002, and the Bond and MacCarlie cases were stayed.

III. Further State Court Proceedings

On November 26, 2001, petitioner Hamby filed a habeas petition in the California Supreme Court raising nine claims, and petitioner Frazier filed a petition raising fifteen claims.  On December 10, 2001, petitioner Fenenbock filed a petition raising nine claims.  On July 19, 2002, petitioner MacCarlie filed a petition raising ten claims.  On August 20, 2002, petitioner Bond also filed a petition raising ten claims.  In a single order filed June 25, 2003, the California Supreme Court denied the exhaustion petitions filed by all five petitioners.

IV. Further Federal Court Proceedings

On various dates after August 4, 2003, four of the five petitioners filed amended habeas petitions as a matter of right.  Petitioner Fenenbock's amended petition alleges ten claims, including the seven raised in his original petition.  Petitioner Frazier's amended petition alleges sixteen claims, including the two raised in her original petition.  Petitioner Bond's amended petition alleges twelve claims, including the two raised in his original petition.  Petitioner

1   MacCarlie's amended petition alleges fourteen claims, including the five raised in his original

2   petition.  Because the respondent previously filed an answer to petitioner Hamby's original

3   petition, petitioner Hamby filed a motion for leave to amend.  Respondent stipulated to the filing

4   of petitioner Hamby's amended petition while reserving the right to raise a statute of limitations

5   defense to any untimely claims.  Petitioner Hamby's amended petition alleges eleven claims,

6   including the two raised in her original petition.

7          On December 5, 2003, respondents filed their first motions to dismiss petitioners'

8   newly added claims as barred by the statute of limitations.  The Ninth Circuit subsequently ruled

9   that the transaction or occurrence at issue in a federal habeas petition for purposes of Rule 15(c)

10  is the petitioner's state trial and conviction and that all new claims alleged in an amended petition

11  relate back to the date of filing the original petition and thereby avoid the one-year statute of

12  limitations.  Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  The undersigned recommended that

13  respondents' motions to dismiss be denied, and the findings and recommendations were adopted

14  on October 1, 2004.

15         On January 4, 2005, respondents moved to stay these proceedings pending

16  Supreme Court action in Felix v. Mayle.  Respondents' motions were heard and denied on

17  February 4, 2005, but respondents were granted six months to respond to the amended petitions.

18  On June 23, 2005, the Supreme Court held that new claims alleged in an amended habeas

19  petition do not relate back to the date of the original petition if the new claims are supported by

20  facts that differ in time and type from those set forth in the original petition.  Mayle v. Felix, 545

21  U.S. 644, 125 S. Ct. 2562 (2005).  Respondents renewed their motions to dismiss in light of the

22  Supreme Court's decision with those motion being filed on August 4, 2005.

23                          THE PARTIES' ARGUMENTS

24  I.  Respondent's Motion to Dismiss

25         Respondent moves to dismiss petitioner Hamby's amended petition on the ground

26  that it contains claims that are untimely under the AEDPA statute of limitations and do not relate

7

back to claims that were timely filed.  Respondent asserts that petitioner was aware at all times of

respondent's intention to oppose petitioner's newly exhausted claims as untimely, yet petitioner

did not include in her amended petition any reasons why the new claims should not be dismissed

as time barred.  Respondent acknowledges that petitioner offered such reasons in opposition to

respondent's first motion to dismiss, but respondent declines to assume petitioner will rely upon

the same reasons in opposing the renewed motion to dismiss.

Respondent contends that the new claims alleged in petitioner Hamby's amended

petition are untimely.  Respondent identifies the newly added claims as Claim B and Claims E

through L.  Respondent sets forth a history of petitioner's proceedings in state and federal court

that includes the following key dates:

| | |
|---|---|
| October 2, 1996 | California Supreme Court denied review on direct appeal |
| December 31, 1996 | State court judgment became final upon expiration of the time to file a petition for certiorari in the United States Supreme Court |
| January 31, 1997 | Federal habeas petition was filed, alleging two claims |
| December 31, 1997 | One-year period of limitation expired |
| November 26, 2001 | First state habeas petition was filed in California Supreme Court, alleging nine claims |
| June 25, 2003 | California Supreme Court summarily denied the habeas petition |
| September 5, 2003 | Petitioner moved for leave to file an amended federal habeas petition and filed a proposed amended petition alleging eleven claims, including the two original claims (now designated claims C and D) |
| October 7, 2003 | Amended petition deemed filed by stipulation and order |

Respondent points to the date on which petitioner's judgment became final, the

date on which the statute of limitations expired, and the date, almost six years after the statute of

limitations expired, on which petitioner filed her amended federal habeas petition raising new

claims.  Respondent concludes that she has met her burden to plead and prove that petitioner's

new claims are untimely and that the amended petition must be dismissed unless petitioner can

1    meet her burden of establishing a factual basis for tolling the statute in some way that will

2    circumvent the limitations period for her.  Respondent compares each of petitioner's new claims

3    with those alleged in petitioner's initial federal habeas petition and contends that not one new

4    claim relates back to any claim alleged in the original, timely pleading.

5    II.  Petitioner's Opposition

6           Counsel for petitioner Hamby refers to the Eighth and Tenth Circuit cases cited by

7    the Supreme Court in Mayle v. Felix as examples of when relation back is permitted and

8    concludes that all of petitioner Hamby's new claims either relate back to her original claims or

9    are timely for other reasons.  Petitioner characterizes her original pro se petition as a broad attack

10   on her conspiracy conviction presented by challenging jury instructions that did not allow the

11   jury to make an accurate and reliable determination of the extent of her involvement in the

12   conspiracy and prevented the jury from considering lesser included offenses.  Petitioner contends

13   that the core of operative facts tying her new claims to the original claims is that constitutional

14   error occurred when she was convicted of conspiracy to commit murder and the jury was not

15   given an opportunity to convict her of something else.  Petitioner concludes that the original

16   claims put respondent on notice "that all facts used to prove her involvement in a conspiracy to

17   kill were being contested and put at issue."  (Pet'r's Opp'n to Resp't's Aug. 4, 2005 Mot. to

18   Dismiss at 8.)

19          In particular, petitioner argues that her new Claim B, attacking the charging of the

20   conspiracy because certain overt acts could not legally support a conspiracy conviction, relates to

21   the validity of the proof of the charged conspiracy submitted at trial and the way the jury was

22   instructed and furthermore merely asserts an alternative legal theory in connection to her original

23   claim challenging the court's failure to instruct on lesser included offenses.  Similarly, petitioner

24   argues that her new Claim E, attacking the prosecution's presentation of false and unreliable

25   evidence through the testimony of Randy Hogrefe and Officer Kartchner, relates back to her

26   original claim attacking the conspiracy conviction because the original petition "put respondent

1    on notice that she was contesting the conduct of the trial in terms of the actual existence and

2    purpose of this alleged agreement [to kill Hop].”  (Id.)  Petitioner argues that Claim F,

3    concerning lack of defense access to Randy Hogrefe; Claim G, coercive investigative techniques;

4    Claim H, prosecutorial misconduct; Claim I, ineffective assistance of trial counsel; Claim J,

5    denial of the right to be present when the court played the introductory videotape; Claim K, the

6    severance and sequencing of the defendants’ trials; and Claim L, ineffective assistance of

7    appellate counsel, all relate back to the same common core of operative facts underlying her

8    original claims concerning the alleged conspiracy and petitioner’s inability to defend against the

9    charge of conspiracy to commit murder.  With regard to new Claim J, petitioner also asserts that

10   the factual predicate for the claim was not discovered until June 1999, when the introductory

11   videotape was obtained and viewed by habeas counsel for the first time, and that respondents

12   were put on notice of this issue in May 1999.  Petitioner also states that she joins in all applicable

13   arguments raised by other petitioners.

14   III.  Respondent’s Reply

15           Respondent asserts that petitioner totally misapprehends the Supreme Court’s

16   holding in Mayle and that her analysis is a thinly veiled repackaging of the approach that was

17   taken by the Ninth Circuit in Felix v. Mayle and has now been squarely rejected by the Supreme

18   Court.

19           Respondent describes the operative facts for petitioner’s original Claim 1, in

20   which she attacked the trial court’s refusal to give an accessory-after-the-fact instruction, as the

21   facts needed to determine whether the trial court correctly evaluated the totality of the evidence

22   presented and properly complied with California law regarding the charging of a jury on a theory

23   of accessory after the fact.  Respondent characterizes the operative facts for petitioner’s original

24   Claim 2, in which she attacked the trial court’s finding that there were no lesser included offenses

25   of conspiracy to commit murder and the consequent failure to instruct on lesser included

26   /////

1   offenses, as the facts needed to determine whether the trial court correctly interpreted California

2   law regarding instruction on lesser included offenses.

3              Respondent identifies the operative facts for each of petitioner's new claims and

4   asserts that the claims in the original and amended petitions are not tied to a common core of

5   operative facts.  Respondent contends that for new Claim B, alleging that the conspiracy charge

6   submitted to the jury included three overt acts that were legally insufficient to support a

7   conviction, the operative facts involve the nature of the overt acts charged and whether those acts

8   could properly serve as the basis for the jury's finding of a conspiracy; for new Claim E, alleging

9   that the prosecution's presentation of false and unreliable evidence through the testimony of

10  Randy Hogrefe corroborated by Officer Kartchner, the operative facts involve whether the

11  prosecution knowingly presented false and unreliable evidence and co-opted Officer Kartchner

12  into corroborating the knowing presentation of such evidence; for Claim F, alleging denial of

13  access to Randy Hogrefe prior to his testimony at trial, the operative facts involve actions taken

14  by the prosecution in collusion with others and with the unwitting assistance of the trial court that

15  allegedly kept defense counsel and their agents from having access to Randy Hogrefe prior to his

16  testimony at trial; for Claim G, alleging coercive investigative techniques, the operative facts

17  involve the actions of Officer Kartchner and other law enforcement personnel while investigating

18  and helping to prepare the prosecution's case; for Claim H, alleging prosecutorial misconduct,

19  the operative facts involve the actions of the prosecutor, Officer Kartchner, other law

20  enforcement personnel, and other individuals during the investigation and throughout the course

21  of the trial; for Claim I, alleging ineffective assistance of counsel, the operative facts involve trial

22  counsel's performance with regard to impeachment of a prosecution witness, cross-examination

23  of another witness, a jury view incident, perceived acts of prosecutorial misconduct, the content

24  of and procedure in showing the introductory videotape, the sequencing of trials, the legal

25  inadequacy of the jury instructions with respect to overt acts 1-3 in the conspiracy charge, failure

26  to request instructions on solicitation and the existence of multiple conspiracies, and failure to

1   argue an accessory theory after convincing the trial court to give an instruction on a lesser offense

2   supported by the evidence and thereby causing the court to fail to give the previously agreed

3   upon accessory instruction; for Claim J, alleging denial of the right to be present when the

4   introductory videotape was played for potential jurors, the operative facts involve the playing of

5   the videotape; for Claim K, alleging constitutional violations arising from the severing and

6   sequencing of petitioners' trials, the operative facts involve the trial court's decision concerning

7   severance and the order in which the trials would be conducted; and for Claim L, alleging

8   ineffective assistance of appellate counsel, the operative facts involve appellate counsel's failure

9   to move to expand the scope of her appointment on direct appeal and her failure to argue on

10  direct appeal any of the new issues alleged in petitioner's amended federal habeas petition.

11          With regard to petitioner's separate argument that the factual predicate for Claim J

12  was not discovered until June 1999, thereby triggering a later start date for the limitations period,

13  respondent notes that even if petitioner's factual allegations concerning the late discovery of the

14  claim are true, petitioner's receipt of the videotape revealing the factual predicate for the claim in

15  June 1999 triggered the commencement of the one-year period of limitation and therefore the

16  one-year period for presenting this claim expired in June 2000, more than a year before petitioner

17  filed her state exhaustion petition.

18                                              ANALYSIS

19          In findings and recommendations filed in the five related cases on August 11,

20  2004, the undersigned recommended that respondents' first motions to dismiss be denied

21  pursuant to Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  Because the Felix decision was issued

22  on August 9, 2004, the undersigned recognized that renewed motions to dismiss might be

23  appropriate at a later time and therefore recommended that the motions to dismiss be denied

24  without prejudice.  (See Findings and Recommendations filed Aug. 11, 2004, at 16.)  The

25  findings and recommendations were adopted in full, and respondents' motions were denied

26  without prejudice on September 30, 2004.

By order filed February 8, 2005, the undersigned directed the respondents to respond to the amended petitions by answer or motion to dismiss.  (See Order filed Feb. 8, 2005, at 3.)  Taking into consideration the fact that the Supreme Court had granted certiorari in Mayle v. Felix, the undersigned granted respondents six months to file and serve their responses.  On June 23, 2005, the Supreme Court reversed the Ninth Circuit's decision in Felix.  Mayle v. Felix, 545 U.S. 644, 125 S. Ct. 2562 (2005).  Respondents have properly renewed their motions to dismiss the amended petitions as containing claims that are untimely.  Arguments unrelated to the timeliness of petitioners' claims will not be considered by the court at this time and should be raised in answers responsive to the claims that are found to be timely.

I.  The AEDPA Statute of Limitations

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted.  The AEDPA amended 28 U.S.C. § 2244 by adding the following provision:

> (d) (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

13

1   28 U.S.C. § 2244(d).  The one-year AEDPA statute of limitations applies to all federal habeas

2   corpus petitions filed after the statute was enacted and therefore applies to the present case,

3   which was filed after April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).

4       A.  Application of § 2244(d)(1)(A)

5           For purposes of 28 U.S.C. § 2244(d)(1)(A), petitioner Hamby's judgment became

6   final on December 31, 1996, ninety days after the California Supreme Court denied review on

7   appeal.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  The one-year period of

8   limitation began to run on January 1, 1997.  Petitioner Hamby did not file any state petitions for

9   collateral relief in the year following December 31, 1996.  Accordingly, the one-year period of

10  limitation ran without interruption from January 1, 1997, until it expired on December 31, 1997.

11          It is undisputed that the pro se federal habeas petition received from petitioner

12  Hamby on January 31, 1997, was timely filed.  Petitioner's amended petition was filed by

13  counsel on September 5, 2003, and by stipulation approved by the court was deemed filed on

14  October 7, 2003, almost six years after the statute of limitations expired.  Any new claims alleged

15  in the amended petition are barred by the AEDPA statute of limitations unless some other

16  statutory provision applies or the claims are rendered timely under some applicable rule or

17  doctrine.

18      B.  Application of § 2244(d)(1)(D)

19          Pursuant to § 2244(d)(1)(D), the one-year period of limitation will run from "the

20  date on which the factual predicate of the claim or claims presented could have been discovered

21  through the exercise of due diligence," if that date is later than the date on which the petitioner's

22  judgment became final.  The language of § 2244(d)(1)(D) requires the court to determine the date

23  on which the petitioner "could have discovered the factual predicate" of his claim, not the date on

24  which the petitioner understood the legal significance of the facts known to him or the date on

25  which he obtained evidence to support his claim.  Hasan v. Galaza, 254 F.3d 1150, 1154 & n.3

26  (9th Cir. 2001) (holding that the due diligence clock started ticking when the prisoner learned

14

1  facts that supported a good faith basis for arguing prejudice arising from ineffective assistance of

2  counsel, whether or not the prisoner understood the legal significance of the facts known to him);

3  Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or

4  through diligence could discover) the important facts, not when the prisoner recognizes their

5  legal significance."); Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) ("Section

6  2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas

7  petitioner gathers every possible scrap of evidence that might, by negative implication, support

8  his claim.").

9          Petitioner Hamby contends that the statute of limitations did not begin to run on

10  January 1, 1997, for Claim J in her amended petition.  Petitioner has demonstrated that the

11  factual predicate for Claim J was not discovered until habeas counsel obtained the voir dire

12  videotape on June 8, 1999.  However, counsel's receipt of the videotape triggered the running of

13  the one-year period of limitation, and the statute of limitations for Claim J expired on June 8,

14  2000, more than a year before petitioner filed her state exhaustion petition.  Put another way,

15  petitioner has not shown that she could not have discovered the factual predicate for Claim J

16  prior to November 26, 2000, i.e., a year prior to the filing of her state exhaustion petition.

17  Petitioner has therefore failed to demonstrate that Claim J in her amended petition was timely

18  filed by application of  § 2244(d)(1)(D).

19  II.  Relation Back of New Claims

20          An application for a writ of habeas corpus "may be amended or supplemented as

21  provided in the rules of civil procedure applicable to civil actions."  28 U.S.C. § 2242.  See also

22  Rule 11, Fed. R. Governing § 2254 Cases (providing that the Federal Rules of Civil Procedure

23  may be applied in habeas corpus proceedings to the extent that the rules of civil procedure are not

24  inconsistent with any statutory provision or with the rules governing habeas cases); Fed. R. Civ.

25  P. 81(a)(2) (providing that the Federal Rules of Civil Procedure are applicable to proceedings for

26  habeas corpus "to the extent that the practice in such proceedings is not set forth in statutes of the

1  United States, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255

2  Proceedings").

3          Under Federal Rule of Civil Procedure 15(a), a habeas petitioner may amend his

4  pleadings once as a matter of course before a responsive pleading is served and may seek leave of

5  court to amend his pleading at any time during the proceeding.  Mayle v. Felix, 545 U.S. 644,

6  ___, 125 S. Ct. 2562, 2569 (2005).  Under Rule 15(c), a petitioner's amendments made after the

7  statute of limitations has run will relate back to the date of his original pleading if the new claims

8  arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

9  original pleading.  Id. (citing Fed. R. Civ. P. 15(c)(2)).

10          In Mayle v. Felix, the Supreme Court explained that "[t]he 'original pleading' to

11  which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas

12  proceeding."  Id. at 2569-70.  The Court observed that the complaint in an ordinary civil case

13  need only provide fair notice of the plaintiff's claim and the grounds on which the claim rests,

14  while a habeas petition is required to specify all grounds for relief available to the petitioner and

15  state the facts supporting each ground.  Id. at 2570.  Because of this difference between civil

16  complaints and habeas petitions, the relation back of new habeas claims "depends on the

17  existence of a common 'core of operative facts' uniting the original and newly asserted claims."

18  Id. at 2572.[1]  The common core of operative facts must not be viewed at too high a level of

19  generality, and an "occurrence" will consist of each separate set of facts that supports a ground

20  for relief.  Id. at 2573.  See also United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) ("[A]

21  petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of

22  ineffective assistance in the original petition, and then amending the petition to assert another

23  ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."), cert.

24

25          [1]  See Jackson v. Roe, 425 F.3d 654, 660 n. 8 (9th Cir. 2005) ("Instead, held the Court, an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a 'common core of operative facts' with the original claim.) (quoting Mayle v. Felix, 125 S. Ct. at

26  2574).

1  denied ___U.S.___, 126 S. Ct. 2906 (2006).  Applying these principles in Mayle, the Court ruled

2  that the petitioner's new claim did not relate back to his original claim because the new claim

3  arose from the petitioner's own pretrial interrogation and was different in time and place from his

4  original claim, which arose from the pretrial police interrogation of a witness.  Id. at 2572-73.

5        Neither the Supreme Court's analysis in Mayle nor the language of Rule 15

6  supports a conclusion that a new claim raised by a party in his amended pleading can relate back

7  to a claim raised by another party in a separate pleading in the same action, much less to a claim

8  raised by another party in a pleading in another action.  Rule 15(a) speaks repeatedly of "*a party*"

9  amending "*the party's pleading*," and Rule 15(c) provides that "[a]n amendment of *a pleading*

10  relates back to the date of *the original pleading* when . . . the claim or defense asserted in *the*

11  *amended pleading* arose out of the conduct, transaction, or occurrence set forth or attempted to

12  be set forth in *the original pleading*."  Fed. R. Civ. P. 15(a) and (c) (emphasis added).  Thus, in

13  determining relation back pursuant to Rule 15(c), the only relevant pleadings are the party's

14  original pleading and that same party's amended pleading.

15        While Rule 15(c) provides for relation back in three different circumstances, only

16  one of the three provisions is applicable to habeas proceedings.  The rule, omitting only the

17  provisions concerning service of the United States or any agency or officer thereof for purposes

18  of Rule 15(c)(3), provides as follows:

19        **(c) Relation Back of Amendments.**  An amendment of a pleading
      relates back to the date of the original pleading when

20              (1) relation back is permitted by the law that provides
      the statute of limitations applicable to the action, or

21              (2) the claim or defense asserted in the amended
      pleading arose out of the conduct, transaction, or

22        occurrence set forth or attempted to be set forth in the
      original pleading, or

23              (3) the amendment changes the party or the naming of
      the party against whom a claim is asserted if the foregoing

24        provision (2) is satisfied and, within the period provided by
      Rule 4(m) for service of the summons and complaint, the

25        party to be brought in by amendment (A) has received such
      notice of the institution of the action that the party will not

26        be prejudiced in maintaining a defense on the merits, and

1                (B) knew or should have known that, but for a mistake
concerning the identity of the proper party, the action would
2                have been brought against the party. . . .

3   Fed. R. Civ. P. 15(c) (as last amended in 1993).

4          Rule 15(c)(1) does not apply to habeas proceedings because 28 U.S.C. § 2244(d),

5   i.e., "the law that provides the statute of limitations applicable to the action," does not include a

6   provision permitting relation back.

7          Rule 15(c)(2) is the provision applied to habeas proceedings by the Supreme

8   Court in <u>Mayle</u>.  125 S. Ct. at 2566 ("This case involves two federal prescriptions:  the one-year

9   limitation period imposed on federal habeas corpus petitioners by the Antiterrorism and Effective

10   Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1); and the rule that pleading

11   amendments relate back to the filing date of the original pleading when both the original plea and

12   the amendment arise out of the same 'conduct, transaction, or occurrence,' Fed. Rule Civ. Proc.

13   15(c)(2).").

14          Rule 15(c)(3), which concerns amendments that change the party against whom a

15   claim is asserted, is not applicable to habeas proceedings because there is only one possible

16   petitioner and there are habeas statutes and rules that govern the naming of the proper respondent

17   and the service of respondents.  <u>Compare</u> Fed. R. Civ. P. 15(c)(3) <u>and</u> Fed. R. Civ. P. 4(m) <u>with</u>

18   Rule 2(a), Fed. R. Governing § 2254 Cases (requiring a petitioner currently in custody under a

19   state-court judgment to name as respondent the state officer who has custody of him) <u>and</u> Rule 4,

20   Fed. R. Governing § 2254 Cases (stating requirements for service of habeas petition and order).

21   <u>See</u> Rule 11, Fed. R. Governing § 2254 Cases; Fed. R. Civ. P. 81(a)(2).

22          Petitioners' reliance on the Advisory Committee Notes to the 1966 amendment to

23   Rule 15(c) is misplaced because, according to those very notes, the 1966 amendment amplified

24   the rule "to state more clearly when an amendment of a pleading changing the party against

25   whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a

26   defendant) shall 'relate back' to the date of the original pleading" and in particular addressed a

problem that arose "in certain actions by private parties against officers or agencies of the United States." The 1966 amendment concerned only Rule 15(c)(3), which is not applicable to habeas petitions, and the advisory committee notes addressed only the amendment of a pleading to change the party against whom a claim or defense is asserted. The notes do not support a conclusion that a habeas petitioner's new claims can relate back to the date of a pleading filed by another habeas petitioner in a separate habeas proceeding. In particular, the final paragraph of those notes, referring to "[t]he relation back of amendments changing plaintiffs," is irrelevant in habeas proceedings in which the only possible "plaintiff" is the state prisoner who is challenging his state court conviction or sentence. The undersigned rejects petitioners' argument that any of their new claims relate back to claims raised by the other petitioners in their separate cases.

Petitioners' reliance on orders relating their cases is also misplaced. Under the Local Rules of Practice for the United States District Court for the Eastern District of California, the court may assign two or more cases to the same district judge or magistrate judge, or both, when doing so will "effect a substantial savings of judicial effort" and avoid a "substantial duplication of labor." Local Rule 83-123(a). As stated in the court's standard order relating cases pursuant to this rule, no consolidation of the cases is effected by their assignment to the same judge or judges,[2] and each case proceeds as a separate case. The relating of cases for purposes of judicial economy has no bearing on the relation back of new claims alleged in a party's amended pleadings pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

/////

---

[2]   The related case order filed in the Hamby, Fenenbock, and Frazier cases in 1997 specifically stated that "[t]he parties should be aware that relating the cases under Local Rule 83-123 merely has the result that the three (3) actions are assigned to the same judge and magistrate judge; no consolidation of the actions is effected." (Order filed Dec. 24, 1997, in case No. CIV S-97-0164, case No. CIV S-97-1731, and case No. CIV S-97-2196, at 2.) Likewise, the related case order filed in the Hamby, Fenenbock, Frazier, Bond, and MacCarlie cases in 2001 states that "[t]he parties should be aware that relating these five cases under Local Rule 83-123 merely has the result that the actions are assigned to the same judge; no consolidation of the actions is effected." (Order filed Dec. 12, 2001, in case No. CIV S-97-0164, case No. CIV S-97-1731, case No. CIV S-97-2196, case No. CIV S-99-2150, and case No. CIV S-00-1830, at 2.)

1         The court turns to a comparison of the claims raised in petitioner Hamby's

2 original petition and those raised in her amended petition.  The claims alleged in the original

3 petition are summarized by the court as follows:

4         Claim One:  Under the Sixth and Fourteenth Amendments,
        petitioner's due process rights to a fair trial and trial by jury were

5         violated by the trial court's refusal to give the requested lesser
        related offense instruction on accessory after the fact, although

6         there was substantial evidence to support this finding and the
        defense relied on this theory in closing argument;

7

8         Claim Two:  Under the Sixth and Fourteenth Amendments,
        petitioner's due process rights to a fair trial and trial by jury were
        violated by the trial court's erroneous finding that there are no

9         lesser included offenses of conspiracy to commit first degree
        murder and the trial court's failure to instruct on lesser included

10         offenses which the evidence showed could have been the object of
        the conspiracy.

11

12         In his amended petition, petitioner Hamby alleges her two original claims as

13 Claims C and D.  Respondent does not dispute the timeliness of Claims C and D, and the

14 undersigned finds that those claims relate back to the claims in the original petition.

15         Petitioner Hamby's new Claims B and E-L[3], the timeliness of which are disputed,

16 are summarized by the court as follows:

17         B.  Petitioner's due process right to have the prosecution prove
        every element of the crime charged beyond a reasonable doubt was

18         violated because the submission of the conspiracy charge included
        three overt acts that were legally insufficient to support a

19         conviction of conspiracy;

20         E.  The prosecution's presentation of unreliable evidence and a
        false theory of how the killing occurred, through the testimony of

21         Randy Hogrefe as corroborated by Detective Kartchner, denied
        petitioner her due process rights;

22

23         F.  Petitioner was denied her due process rights to a fair trial, to
        prepare a defense, and to confront a primary prosecution witness
        when the government denied defense counsel access, both prior to

24 /////

25         [3]  There is no Claim A.  Part A of the section of the amended petition that contains

26 petitioner's claims is titled "Introduction."

and during trial, to Randy Hogrefe, the only alleged eyewitness to the murder;

G.  Petitioner was denied her rights to a fair trial and to prepare and present a defense by investigative techniques, such as threatening and coercing witnesses and conducting suggestive interviews, that concealed, destroyed, and suppressed evidence favorable to the defense;

H.  Repeated prosecutorial misconduct during investigation and trial resulted in the denial of petitioner's rights to due process and resulted in an unreliable verdict; the prosecution knowingly elicited false and misleading testimony from Kartchner concerning media reports about the murder, which was used to bolster the credibility of Hogrefe's testimony; the prosecution assisted in planting unreliable and possibly false memory in Hogrefe's mind and prevented him from having any contact with the defense; the prosecutor approved the destruction of witness Michael Sutton's first notes about the incident and the replacement of those notes with a more favorable version which was added to by law enforcement; the prosecutor repeatedly vouched for the credibility of numerous witnesses at trial and injected himself as a witness at trial by the improper and repeated use of "didn't you tell me" when asking questions at trial; the prosecutor called witnesses knowing that they would not testify as he hoped, solely to elicit otherwise inadmissible testimony concerning contradictory statements that those witnesses allegedly made to Kartchner during unrecorded interviews; the prosecutor used false and misleading testimony regarding DNA blood evidence and the victim's wounds; on numerous occasions the prosecutor improperly rehabilitated Kartchner as a witness; the prosecutor improperly vouched for the credibility of witnesses, particularly Hogrefe, during closing argument;

I.  Petitioner was denied effective assistance of trial counsel as follows:  counsel failed to impeach prosecution witness Maeolla Berry with available evidence contradicting her trial testimony; counsel failed to competently cross-examine Michael Sutton; counsel failed to object to the altered scene at the jury view or have the jury informed as to how the scene had been altered; counsel failed to object to prosecutorial misconduct in the examination of witnesses and in closing argument; counsel failed to object to the improper procedure used in showing the jury panel a videotape and to the tape's content; counsel failed to adequately preserve petitioner's right to present potentially exculpatory testimony by failing to ensure that petitioner's trial occurred after co-defendant MacCarlie's trial; counsel failed to object to and correct legally inadequate instructions with respect to overt acts 1-3 in the conspiracy charge; counsel failed to request instructions on solicitation and on the existence of multiple conspiracies; counsel convinced the trial court to give an instruction on a lesser offense

21

supported by the evidence but then failed to argue an accessory theory and thereby caused the court to fail to give the previously agreed upon instruction on accessory after the fact;

J.  The showing of the videotape made by Judge Letton, in which the court addressed the elements of the charged crime, to prospective jurors outside the presence of petitioner and her counsel deprived petitioner of a fair trial;

K.   The severance of cases and requirement that petitioner be tried prior to co-defendant MacCarlie deprived her of a fair trial, compulsory process, and the right to present a defense;

L.  Petitioner was deprived of effective assistance of appellate counsel when counsel, who is now representing petitioner in her federal habeas proceedings, failed to move to expand her appointment on direct appeal to include the filing of a writ of habeas corpus in the California Court of Appeal and when counsel failed to argue on direct appeal any of the issues raised in petitioner's amended federal habeas petition that should have been raised on direct appeal.

After careful consideration of petitioner Hamby's original and amended petitions, as well as the parties' arguments, the undersigned finds that petitioner's Claims B and E-L do not share a common core of operative facts with either of petitioner's two original claims and therefore do not relate back to the original petition.  As set forth above, petitioner's original two claims were quite specific and limited.  Therein petitioner challenged only the trial court's failure to give a lesser related instruction on accessory after the fact and the trial court's finding that there were no lesser included offenses with respect to the charged conspiracy to commit murder. On the other hand, petitioner Hamby's new claims B and E-L present a broad ranging challenge to her judgment of conviction.  The grounds set forth in these new claims include that petitioner was convicted of the conspiracy based upon overt acts not separate from the conspiracy as a matter of law, denied access to witness Hogrefe, convicted on false evidence tainted by prosecutorial and police misconduct, denied the effective assistance of trial counsel in eight specific instances, denied the effective assistance of appellate counsel and denied a fair trial by the playing of the introductory videotape and the order in which the trials were conducted. Petitioner Hamby's original petition does not recite any of the facts needed to support these new

1    claims.  Thus, the original claims and new claims are based upon completely separate sets of

2    facts.

3    III.  Equitable Tolling

4            The Ninth Circuit Court of Appeals determined in 1997 that the one-year period

5    of limitation contained in 28 U.S.C. § 2244(d) is a statute of limitations subject to tolling.

6    Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in

7    part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530 (9th Cir.

8    1998).  the court cautioned that "[e]quitable tolling will not be available in most cases, as

9    extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's

10   control make it impossible to file a petition on time." Calderon,128 F.3d at 1288-89 (citing

11   Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1997)).  The availability of

12   equitable tolling of the AEDPA statute of limitations must be limited because courts are expected

13   to "take seriously Congress's desire to accelerate the federal habeas process."  128 F.3d at 1289.

14   See Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (describing the Ninth Circuit's standard

15   as setting a "high hurdle" to the application of equitable tolling).

16           Even where extraordinary circumstances are shown, equitable tolling will not be

17   available unless the petitioner diligently pursued his claims.  128 F.3d at 1289.  It is only when

18   external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely

19   habeas petition that equitable tolling may be appropriate.  Miles v. Prunty, 187 F.3d 1104, 1107

20   (9th Cir. 1999).  The petitioner bears the burden of demonstrating grounds for equitable tolling.

21   Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005); Miranda v. Castro, 292

22   F.3d 1063, 1065 (9th Cir. 2002).

23           Since recognizing the availability of equitable tolling of the AEDPA context in

24   1997, the Ninth Circuit Court of Appeals has addressed the issue many times.  For the most part,

25   and most often in unpublished decisions, the appellate court has affirmed district court decisions

26   denying equitable tolling.  Typical decisions affirming the denial of equitable tolling include

1    Miranda v. Castro, 292 F.3d 1063, 1067-68 (9th Cir. 2002), in which the court affirmed the

2    district court's denial of equitable tolling where the pro se petitioner filed his petition untimely

3    on the basis of erroneous information provided by the attorney appointed to represent him on

4    direct appeal, and Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001), in which the court

5    affirmed the district court's denial of equitable tolling where the petitioner's attorney

6    miscalculated the limitations period.  In Brambles v. Duncan, 412 F.3d 1066, 1070-71 (9th Cir.),

7    cert. denied, ___ U.S. ___, 126 S. Ct. 485 (2005), the Ninth Circuit recently affirmed the district

8    court's denial of equitable tolling where the petitioner filed an untimely petition after he had

9    previously filed a timely mixed petition but, pursuant to district court instructions that were not

10   affirmatively misleading, chose to dismiss the entire petition and return to state court to exhaust

11   additional claims.  See also Raspberry v. Garcia, 448 F.3d 1150, 1153-54 (9th Cir. 2006)

12   (affirming the denial of equitable tolling because neither the district court's failure to advise the

13   petitioner of the right to amend his petition to include unexhausted claims nor petitioner's

14   inability to correctly calculate the limitations period were extraordinary circumstances warranting

15   equitable tolling).

16           Due to the highly fact-dependent nature of the grounds for equitable tolling, the

17   Ninth Circuit has occasionally remanded a case for further factual development of an issue such

18   as a petitioner's mental illness, a petitioner's access to his legal materials, and the adequacy of a

19   particular prison law library at a specific time.  See, e.g., Mendoza v. Carey, 449 F.3d 1065,

20   1069-71 (9th Cir. 2006) (remanding for appropriate development of the record on the issue of

21   whether petitioner's inability to obtain Spanish-language materials or procure translation

22   assistance was an extraordinary circumstance preventing him from filing a timely habeas

23   petition); Laws v. Lamarque, 351 F.3d 919, 922-24 (9th Cir. 2003) (remanding for development

24   of the record or an evidentiary hearing on the issue of whether the petitioner's mental illness

25   prevented him from timely filing his habeas petition); Lott v. Mueller, 304 F.3d 918, 923 (9th

26   Cir. 2002) (remanding for development of the record related to the availability of equitable

24

tolling where the petition was filed, at most, twenty days late, and the pro se petitioner alleged in his traverse that he was denied access to his legal files for eighty-two days during the one-year period of limitation due to two temporary transfers for court proceedings in an unrelated civil court matter); Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding for further factual development related to the availability of equitable tolling or a finding of a state-caused impediment under § 2244(d)(1)(B) where the petitioner alleged that the prison law library contained no legal materials describing the AEDPA and its one-year limitations period until June of 1998).

The Ninth Circuit has affirmed or mandated equitable tolling in those relatively few cases where a diligent petitioner was unable to file a timely petition due to a significant delay caused by an external force such as the district court, prison officials, or, but rarely, the petitioner's own habeas counsel.  See Espinoza-Matthews v. California, 432 F.3d 1021 (9th Cir. 2005) (applying equitable tolling for the period of almost eleven months during which the pro se petitioner was housed in administrative segregation for his own protection and was denied access to his legal materials throughout that time despite his diligent efforts to obtain access); Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003) (finding the misconduct of the petitioner's attorney sufficiently egregious to justify equitable tolling where the attorney was hired nearly a full year in advance of the deadline for filing a federal petition but did not prepare and file the petition despite the fact that the petitioner and his mother contacted the attorney numerous times seeking action and where, despite a request for return of the file, the attorney retained the file for the duration of the limitations period and two months beyond); Smith v. Ratelle, 323 F.3d 813 (9th Cir. 2003) (applying equitable tolling where the district court had previously dismissed the pro se petitioner's timely habeas petition without giving him an opportunity to file an amended petition as an alternative to dismissal); Stillman v. LaMarque, 319 F.3d 1199 (9th Cir. 2003) (applying equitable tolling where the prison litigation coordinator promised the petitioner's attorney that he would obtain the prisoner's signature in time for filing the petition but broke his promise and

caused the petition to be late); Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (applying

equitable tolling where the district court's initial dismissal of a timely petition was improper and

the court's lengthy delay in ruling that the amended petition was unexhausted consumed 258

days of the pro se petitioner's one-year period of limitation and caused the petitioner to lose time

that would otherwise have been available for exhausting state court remedies); Miles v. Prunty,

187 F.3d 1104 (9th Cir. 1999) (applying equitable tolling where prison officials delayed the pro

se petitioner's request that a check be drawn on his prison trust account for payment of the filing

fee); Calderon (Kelly), 163 F.3d 530 (applying equitable tolling in a death penalty case because

of an earlier court-ordered stay of the habeas proceedings, the petitioner's alleged mental

incompetency, and the court's mistaken dismissal of the timely habeas proceedings); Calderon

(Beeler), 128 F.3d 1283 (holding in a death penalty case that the withdrawal of court-appointed

habeas counsel, who moved out of state and whose work product was not usable by replacement

counsel, qualified as an extraordinary circumstance beyond petitioner's control that justified

tolling the statute of limitations).

       Although the Supreme Court has recently "framed the equitable tolling standard in

less absolute terms" than the Ninth Circuit's well established test of "impossible to file a petition

on time," the Ninth Circuit has not yet decided whether the Supreme Court's formulation "has

lowered the bar somewhat." Espinoza-Matthews, 432 F.3d at 1026 n.5 (9th Cir. 2005) (citing

Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In Pace, the Supreme Court noted that it has

"never squarely addressed the question whether equitable tolling is applicable to AEDPA's

statute of limitations." 544 U.S. at 418 n.8. The Court found it unnecessary to reach the

question in Pace because the petitioner's failure to establish diligence would preclude the

application of equitable tolling to his untimely petition. Id. at 418-19. The Court observed that

"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements:

(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

/////

1    stood in his way." 544 U.S. at 418 (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89,

2    96 (1990)). See also Raspberry, 448 F.3d at 1153.

3              In the five related cases before this court, the petitioners rely in part on Justice

4    Stevens's concurrence in Duncan v. Walker, 533 U.S. 182 (2001) (Stevens, J., concurring in part

5    and concurring in the judgment). Justice Stevens, joined by Justice Souter, agreed with the

6    Court's decision that the statutory tolling provision contained in § 2244(d)(2) authorizes tolling

7    while a petitioner is pursuing state, but not federal, post-conviction remedies. Id. Citing the

8    general equitable powers of federal courts, Justice Stevens observed that those courts may deem

9    a limitations period tolled as a matter of equity and "might very well conclude that tolling is

10   appropriate based on the reasonable belief that Congress could not have intended to bar habeas

11   review for petitioners who invoke the court's jurisdiction within the 1-year interval prescribed by

12   AEDPA." Id. at 182-83. He speculated that, just as the federal courts of appeals uniformly

13   created a one-year grace period running from the date of AEDPA's enactment for all prisoners

14   whose state convictions became final prior to AEDPA, "federal courts may well conclude that

15   Congress simply overlooked the class of petitioners whose timely filed habeas petitions remain

16   pending in district court past the limitations period, only to be dismissed after the court belatedly

17   realizes that one or more claims have not been exhausted." Id. at 183-84. However, equitable

18   tolling was not the only remedy suggested by Justice Stevens for the class of petitioners he

19   described. He also found "no reason why a district court should not retain jurisdiction over a

20   meritorious claim and stay further proceedings pending the complete exhaustion of state

21   remedies," especially when failure to do so would foreclose federal review of a meritorious claim

22   because of the limitations period. Id. at 183. See also id. at 182 (Souter, J. concurring) ("I have

23   joined Justice Stevens's separate opinion pointing out that nothing bars a district court from

24   retaining jurisdiction pending complete exhaustion of state remedies, and that a claim for

25   equitable tolling could present a serious issue on facts different from those before us.").

26   /////

1          The Ninth Circuit has not hesitated to use its equitable powers to protect

2   petitioners in the class described by Justice Stevens.  A stay-and-abeyance procedure was

3   approved by the Ninth Circuit soon after AEDPA was enacted.  See Calderon v. United States

4   Dist. Court (Thomas), 144 F.3d 618, 620 (9th Cir. 1998) (endorsing a procedure permitting

5   withdrawal of unexhausted claims and abeyance); Calderon v. United States Dist. Court (Taylor),

6   134 F.3d 981, 987-88 (9th Cir. 1998) (recognizing the district court's authority to allow a

7   petitioner to amend a mixed petition to delete unexhausted claims and then hold the completely

8   exhausted petition in abeyance pending exhaustion); Greenawalt v. Stewart, 105 F.3d 1268, 1274

9   (9th Cir. 1997) (recognizing that the district court has discretion to stay a fully exhausted

10  petition).  See also Fetterly v. Paskett, 997 F.2d 1295, 1301-02 (9th Cir. 1993) (holding in a pre-

11  AEDPA case that the district court abused its discretion in denying a capital habeas petitioner's

12  motion to stay a petition containing only exhausted claims pending exhaustion of additional

13  claims in state court).  The Ninth Circuit has also applied the alternate remedy of equitable

14  tolling where a diligent petitioner was unable to file a timely petition due to an improper

15  dismissal or other mishandling and consequent delay caused by the district court.  See Smith, 323

16  F.3d 813; Corjasso, 278 F.3d 874; Calderon (Kelly), 163 F.3d 530.  Moreover, in applying

17  equitable tolling in Corjasso, decided after Duncan, the court commented that its decision to toll

18  the statute "during part of the pendency of [Corjasso's first federal habeas case] is not contrary to

19  the rule in Duncan, for we do not hold that equitable tolling of the statute is appropriate for the

20  entire time Corjasso's petitioner remained in federal court" but "only during the delay caused by

21  the extraordinary circumstances beyond Corjasso's control."  278 F.3d at 879.

22          The petitioners in the five related cases before this court do not fall within the

23  class of petitioners described by Justice Stevens in his concurring opinion in Duncan.  Here, the

24  five petitioners filed timely habeas petitions raising only exhausted claims.  Their petitions were

25  not dismissed, and all five petitioners are proceeding in their original federal habeas actions.

26  These petitioners did not invoke the court's jurisdiction over meritorious claims within the

28

1   one-year interval prescribed by AEDPA, only to find habeas review of those claims forever

2   barred due to the court's failure to retain jurisdiction over the timely-filed claims while the

3   petitioners returned to state court to exhaust additional claims.  Nor are these petitioners and the

4   petitioner in Corjasso similarly situated.  Corjasso, 278 F.3d at 878 (applying equitable tolling

5   where the district court's initial dismissal of a timely petition was improper and the court's

6   lengthy delay in ruling that the amended petition was unexhausted consumed 258 days of the pro

7   se petitioner's one-year period of limitation and caused the petitioner to lose time that would

8   otherwise have been available for exhausting state court remedies).

9          The undersigned finds that equitable tolling should be applied during a portion of

10  these federal proceedings, but, as the Ninth Circuit held in Corjasso, "only during the delay

11  caused by the extraordinary circumstances beyond [petitioners'] control."  278 F.3d at 879.  It

12  was beyond the control of petitioners Hamby, Fenenbock, and Frazier that when judgment was

13  entered against them on March 16, 1994, five co-defendants remained to be tried in a case in

14  which the prosecution's theory was that all eight conspired to murder Gary Summar and

15  participated in his murder.  Trial did not commence for co-defendants Bond, MacCarlie, and

16  Dodds until September 1994, and judgment was not entered against co-defendants Bond and

17  MacCarlie until January 20, 1995.  The trial for co-defendants Adcock and Lockley was not

18  conducted until 1995.  It was beyond the control of petitioners Hamby, Fenenbock, and Frazier

19  that their appeals had to be filed in 1994 prior to the trials of five co-defendants.  Petitioners

20  Hamby, Fenenbock, and Frazier were not present during the two subsequent trials, had no access

21  to the transcripts of those trials, were in custody during pretrial litigation, were incarcerated after

22  sentencing, and were unrepresented after the California Supreme Court denied review on direct

23  appeal on October 2, 1996.  Although the three petitioners successfully filed timely federal

24  habeas petitions, the pro se petitions filed by petitioner Hamby on January 31, 1997, petitioner

25  Fenenbock on September 12, 1997, and petitioner Frazier on November 20, 1997, were filed

26  without access to any records from the other two trials involving their co-defendants.  Counsel

1   was appointed for petitioner Fenenbock on December 4, 1997, less than a month prior to the

2   expiration of the AEDPA statute of limitations under § 2244(d)(1)(D).  Counsel for petitioners

3   Hamby and Frazier were appointed on January 15, 1998, two weeks after the statute of

4   limitations expired under § 2244(d)(1)(D).

5           By August 31, 1998, counsel for petitioners Hamby, Fenenbock, and Frazier had

6   obtained a substantially complete state court record for the three trials.  (See Joint Status Report

7   and Stipulation lodged in the Hamby, Fenenbock, and Frazier cases on Aug. 28, 1998; Decl. of

8   Daniel J. Broderick attached to Pet'r Frazier's Opp'n filed Aug. 23, 2005, ¶¶ 7 & 8.)  The

9   undersigned finds that the delay caused by extraordinary circumstances beyond the control of

10  petitioners Hamby, Fenenbock, and Frazier ended by August 31, 1998.  While the state court

11  record is voluminous, portions of the record were obtained prior to August 31, 1998.  Moreover,

12  petitioners Hamby, Fenenbock, and Frazier have not shown that it was impossible to identify new

13  claims and seek a stay within one year after obtaining a substantially complete state court record

14  for the three trials on August 31, 1998.  Indeed, in their joint status report filed May 14, 1999,

15  counsel for petitioners Hamby, Fenenbock, and Frazier advised the court that all three of them

16  had read the transcripts for their joint trial and had jointly identified several potential

17  constitutional claims, some of which had been presented to the state courts and some of which

18  had not.  (See Joint Status Report filed by petitioners Hamby, Fenenbock, and Frazier on May 14,

19  1999, at 2.)  In their May 14, 1999 status report, petitioners' counsel also indicated that they had

20  recently obtained and viewed the videotape that was played for potential jurors.  (Id.)  Although

21  the statute of limitations for petitioners' videotape claims may have run from a date later than

22  August 31, 1998, any delay after August 31, 1998 with regard to petitioners' other new claims is

23  attributable to petitioners rather than to external forces outside their control.

24          Equitable tolling from December 31, 1996, when the judgment for petitioners

25  Hamby, Fenenbock, and Frazier became final, to August 31, 1998, when extraordinary

26  circumstances beyond these petitioners' control ceased to exist, does not render petitioners'

1  amended federal petitions timely.  Given that period of tolling, the one-year period of limitation

2  began to run on September 1, 1998, and expired on August 31, 1999.  The state exhaustion

3  petitions filed by petitioners Hamby and Frazier on November 26, 2001, and by petitioner

4  Fenenbock on December 10, 2001, were filed more than two years too late to toll the statute

5  under § 2244(d)(2), and the amended federal petitions filed by these three petitioners in 2003

6  were filed approximately four years too late.

7          Other arguments advanced by petitioners in favor of additional equitable tolling

8  are unpersuasive.  It is undisputed that respondents' counsel stipulated to continuances of status

9  conferences up to October 2001 and did not object to continuances of various deadlines and

10  hearing dates.  However, the petitioners have not demonstrated that respondents waived the

11  statute of limitations, and there is no evidence that petitioners were affirmatively misled by

12  respondents or the court with regard to the statute of limitations.[4]  The need to prepare and file

13  state exhaustion petitions was not an external force that made it impossible for petitioners

14  Hamby, Fenenbock, and Frazier to prepare and file state exhaustion petitions within a year after

15  August 31, 1998.

16          The petitioner in this case is not entitled to equitable tolling for a period of time

17  sufficient to render her amended petition timely.

18                                        CONCLUSION

19          IT IS RECOMMENDED that respondent's August 4, 2005 motion to dismiss be

20  granted with leave to file a second amended petition alleging the claims alleged in petitioner's

21  first amended petition as Claims C and D.

22          These findings and recommendations will be submitted to the United States

23  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

24

25          [4] Indeed, at least as early as April 2000 counsel for respondent was suggesting in opposition
    to a discovery motion that any new claims presented in an amended petition may be procedurally
26  barred.

twenty days after being served with these findings and recommendations, any party may file and serve written objections with the court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be filed and served within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 11, 2006.



DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
hamb0164.mtd2